**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DAMIAN B. BROWN, an individual, and JAMES MUEKSCH, an individual, on behalf of themselves and all others similarly situated, | No. 1:21-cv-2349 |
| Plaintiffs, | CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| CONTINENTAL CASUALTY COMPANY, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

**TABLE OF CONTENTS**

<u>Page</u>

I.    NATURE OF THE CASE .......................................................................................1

II.   JURISDICTION ....................................................................................................2

III.  VENUE .................................................................................................................2

IV.  PARTIES ..............................................................................................................3

V.    FACTUAL ALLEGATIONS ...............................................................................3

        A.     Continental promises that any future rate increases would be uniform across all premium classes. .........................................................3

        B.     Continental seeks and implements premium increases that vary within the same premium class. .....................................................7

VI.  CLASS ACTION ALLEGATIONS .....................................................................9

VII. CAUSES OF ACTION .......................................................................................12

FIRST CAUSE OF ACTION  (BREACH OF CONTRACT).......................................12

SECOND CAUSE OF ACTION  (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING) .....................................................13

THIRD CAUSE OF ACTION  (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *et seq.*) .........................................................................14

FOURTH CAUSE OF ACTION  (FRAUDULENT CONCEALMENT)....................16

FIFTH CAUSE OF ACTION  (DECLARATORY AND INJUNCTIVE RELIEF) ....................17

PRAYER FOR RELIEF .................................................................................................18

JURY TRIAL DEMAND ...............................................................................................18

## I.     NATURE OF THE CASE

1.      Plaintiffs purchased a certificate for long-term care insurance offered to those covered by Wells Fargo & Company's long-term care group policy. Long-term care insurance covers the costs of assistance with the activities of daily life due to disability or old age, costs not generally covered by health insurance. Insurers selling coverage tout the benefits of purchasing this coverage before reaching old age to guarantee the lowest possible premiums. When an insurance company markets and sells coverage for long-term care, it must honor promises made in the policy documents about future premium increases.

2.      When the policy states that premiums will not be increased unless they are changed for everyone in the same age group, an insurance company must not increase premiums at different times, and in different amounts, for insureds within the same age group. Similarly, an insurer must not promise that it will change premiums only by age group or premium class when it knows that it will vary future premium increases state-to-state.

3.      Long-term care coverage buyers are buying long-term financial security, and they count on their insurer to honor its promises made in the contract language.

4.      Continental Casualty Company ("Continental") has broken these rules. While its policy promises that insureds will never be singled out for a rate increase, and that premiums will not change unless they change for all insureds in the same age group, Continental has done the opposite. Continental has imposed rate increases at different times and in different amounts from one state to the next. As a result, insureds within the same age group find themselves paying completely different premiums from one another, even though they are members of the same age group, premium class, and risk pool. Continental's decisions to seek and implement rate increases that vary from one state to the next blatantly violate its promises of uniform premium increases across the Class. Further, Continental knew its promises of uniform rate increases were

false because state regulatory requirements vary. Plaintiffs' rates have increased by 45.475%, an increase far greater than rates charged insureds in other states.

5.     Plaintiffs bring this class action on behalf of all those insured under Continental's group long-term care insurance policies delivered in California, who were promised in policies and policy certificates that their premiums would not be increased unless they were increased for all members of the same age group or premium class. Plaintiffs seek rescission of their insurance contracts and restoration of premiums paid or, in the alternative, declaratory and injunctive relief, disgorgement of ill-gotten gains, and compensatory, statutory, and punitive damages.

## II.     JURISDICTION

6.     This Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiffs are citizens of Texas and Arizona, respectively, and Continental is a citizen of Illinois (where it has its principal place of business) and Delaware (where it is incorporated).

7.     This Court has personal jurisdiction over Continental because Continental has its principal place of business in Chicago, Illinois, and Continental issued master group long-term care insurance policies to group policyholders located in Illinois. This Court has personal jurisdiction over Plaintiffs because Plaintiffs consent to this Court's jurisdiction.

## III.     VENUE

8.     Venue is proper in this District under 28 U.S.C. § 1391 because this is the district in which Continental has its principal place of business and in which Continental engineered the insurance policies and premium increases giving rise to the causes of action.

## IV.    PARTIES

9.    Plaintiff Damian B. Brown is a citizen of the State of Texas and a resident of New Braunfels, Texas.

10.    At all times pertinent, Plaintiff Brown was insured under a group long-term care policy issued and delivered to Wells Fargo & Company ("Wells Fargo") located in California. When he purchased his long-term care policy certificate from Continental, Plaintiff Brown was a resident of the State of California.

11.    Plaintiff James Mueksch is a citizen of the State of Arizona and a resident of Sun City West, Arizona.

12.    From September 2013 until 2019, Plaintiff James Mueksch was insured under a group long-term care policy issued and delivered to Wells Fargo, located in California. When he purchased his long-term care policy certificate from Continental, Plaintiff Mueksch was a resident of the State of Arizona. Continental's unlawful premium increases caused Plaintiff Mueksch to discontinue his long-term care coverage.

13.    Continental is a Delaware corporation with its principal place of business in Chicago, Illinois.

## V.    FACTUAL ALLEGATIONS

**A.    Continental promises that any future rate increases would be uniform across all premium classes.**

14.    Long-term care insurance pays for a variety of services for people who are unable to care for themselves. Long-term care services may include assistance in a home, adult daycare center, an assisted living facility, or skilled nursing home. Long-term care insurance is different from long-term disability insurance, which provides you with income protection in the event that you become disabled. Premiums for long-term care coverage are generally set at the same level

for a given age group. Purchasers of the coverage are assured that by purchasing long-term care coverage at an early age, they can secure a more favorable premium than they could otherwise obtain over the coming years. Long-term care coverage promises the peace of mind that by paying a fair and reasonable premium in the long run, insureds will be protected against the significant expenses of assisted living and other long-term care if and when they need it.

15.     The experience of the long-term care insurance industry has not matched these expectations. Insureds lured in by the promise of affordable premiums early in life have faced massive premium increases, with rates sometimes even doubling in a few years. Rather than obtaining peace of mind, these insureds suffer with the uncertainty of future premium increases, the risk of long-term care expenses that could arise, and the unavailability of affordable coverage alternatives now that they have reached a more advanced age.

16.     These drastic increases are no accident. Insurers disappointed in the performance of their long-term care risk pools have sought to take out their losses on their insureds. And as the facts of this case demonstrate, insurers are determined to protect their bottom line, regardless of their promises or the impact on an aging population that relied upon Continental's promises of financial stability.

17.     Continental is a publicly held financial corporation that issued long-term care insurance policies nationwide.

18.     Continental issued and delivered group long-term care policy number 9725TQ ("the Policy") to Wells Fargo, located in California, with a policy effective date of January 1, 2002. Delivery of an insurance policy to the policyholder occurs when the underwriting process is complete and the actual policy is given to the policyholder, confirming coverage.

19.     Negotiations before issuance of the Policy were conducted between Continental and Wells Fargo, located in California.

20.     Plaintiff Brown purchased a certificate of coverage under the Policy with a coverage effective date of January 1, 2010. Brown had access to coverage under the Policy because at the time he enrolled he was employed by Wells Fargo and thus had access to insurance programs offered through Wells Fargo.

21.     Plaintiff Mueksch purchased a certificate of coverage under the Policy with a coverage effective date of September 1, 2013. Mueksch had access to coverage under the Policy because at the time he enrolled he was employed by Wells Fargo and thus had access to insurance programs offered through Wells Fargo.

22.     Continental underwrote and established the Policy form, premium rates, and actuarial risk pool for employees of Wells Fargo nationwide, as well as other participating groups under the Policy, not limited or classified by their various locations in specific states.

23.     Among other benefits, Mr. Brown's policy provided him with a daily nursing home benefit amount of $70, an Alternate Care Facility benefit of $70, and a Community Based Care benefit of $42.

24.     Among other benefits, Mr. Mueksch's policy provided him with a daily nursing home benefit amount of $150, an Alternate Care Facility benefit of $150, and a Community Based Care benefit of $90.

25.     Under the heading **PREMIUM**, both Plaintiffs' Policy certificates state:

We cannot change the Insured's premiums because of age or health. We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class. A change may be made, as provided in the following paragraph, on any Premium Due Date after the end of the Premium Rate Guarantee Period. The Premium Rate Guarantee Period starts on the Participating Employer's Effective Date. The length of this period is stated in the Schedule of the Master Application.

26. Upon information and belief, the same language appears under the heading **PREMIUM** in the group policy.

27. According to this language, Continental promises its insureds that any premium increases will be made not just for the insured or a group of insureds within a premium class, but for "all other insureds in the same premium class."

28. The Policy contains no additional definition of "premium class." According to the plain meaning of the Policy and the reasonable understanding and expectations of an insured, the "premium class" refers to the nationwide pool of insureds under the group insurance plan within a given age group. Rate schedules showed rates that varied by age and benefit level only, and not by residence of the insured or place of purchase.

29. Similarly, according to the plain meaning of the Policy and the reasonable understanding and expectations of an insured, the quoted Policy certificate language means that if the premium changes for one insured, the same change would apply to the premiums of all members of the premium class. This language assures consumers that their rates will at least remain stable relative to the rates paid by other members of the premium class—which depend only upon age or benefit level, as shown by the rate schedules—so they will not be required to bear a disproportionate cost of coverage for the premium class.

30. Continental issued similar long-term care group insurance policies and policy certificates using the same or similar language to insureds throughout the country under policies delivered in California, like the Wells Fargo policy.

31. A reasonable purchaser of long-term care insurance would naturally understand and deem it highly material that he or she would not be forced to bear a disproportionate share of

the overall premium expense for the risk pool in the form of a premium increase that affects only a subset of the risk pool.

32.     A reasonable insured would further understand that he or she was part of a nationwide premium class.

**B.      Continental seeks and implements premium increases that vary within the same premium class.**

33.     Originally, Plaintiff Brown's certificate carried a bi-weekly premium of $3.42, or quarterly premium of $29.39, and Plaintiff Mueksch's certificate carried a bi-weekly premium of $24.56, or a quarterly premium of $183.56.

34.     In 2017, Continental wrote to each Plaintiff stating that his premium would increase by 45.475% in a phased manner with a 15% increase occurring as of May 1, 2017, a 15% increase occurring as of May 1, 2018, and a 10% increase occurring on May 1, 2019.

35.     The letter further stated that each Plaintiff had three options after the premium increase: (1) continue the current coverage by paying the new premium; (2) reduce coverage to help "minimize the effect" of the premium increase; or (3) execute a non-forfeiture benefit, discontinuing premium payments and accepting a drastically reduced maximum benefit under the certificate.

36.     None of these options was acceptable to Mr. Brown, yet he decided to pay the new increased premium in order to keep his current coverage in place.

37.     None of these options was acceptable to Mr. Mueksch, either, but after premiums were increased and as a result of the increases, he decided to discontinue his coverage.

38.     In the 2017 letter, over two decades after Continental started issuing certificates to insureds under the Policies, Continental disclosed for the first time that the premium increase is not uniform for everyone in the same age group or premium class:

6. **Will the premium rate increase be effective for everyone?**
Since Continental Casualty Company (CCC) must receive approval or authorization from certain states prior to implementing an increase, it is possible that these states will not approve or authorize the same percentage increase or authorize an increase at the same time. It is also possible some states may deny CCC's request for an increase, or require it be reduced or spread over multiple years. In addition, impacted certificate holders have different premium due dates and have different premium billing mechanisms. Premium increases will be staggered in accordance with the timing of regulatory approvals or authorizations and method of premium payment.

39. As stated in the letter, the premium increases vary greatly from state to state. For example, for insureds in the same premium class and risk pool under the same policy form who reside in Washington, D.C., Continental sought only a 10% increase. The rate increases sought by Continental, and the rate increases that were ultimately approved by the various state regulators, are not uniform.

40. Plaintiffs and the Class have been subjected to disparate increases in the cost of their long-term care premiums depending upon the state that they live in.

41. These disparate increases violate the terms of the Policy because Continental has not met its duty to increase premiums "based on [the insured's] premium class."

42. These disparate increases violate the terms of the Policy because Continental has not met its duty to increase premiums "for all other insureds in the same premium class."

43. As a result, insureds living in different states bear a disproportionate cost of long-term care coverage, in effect subsidizing the premiums and risks of other insureds in contravention of Continental's policy. Further, because insurance regulations generally limit insurers to collecting administrative costs and a reasonable profit, the disparate premium increases introduce a systemic imbalance under which Continental will be forced to recoup expenses associated with some insureds at the expense of others, even if future premiums facially comply with any applicable regulatory requirements and the Policy.

44.     As an established insurance company with significant experience in the industry, Continental knew at the time that it issued the Policy and distributed its marketing documents, that premium increases would and could only be made state-by-state and not for the entire premium class or age group. Yet Continental misstated the basis upon which future premium increases would occur and concealed its intention to vary the timing and amount of premium increases for subsets of each premium class or age group, state by state. In fact, while Continental enrolled insureds under the group policies at issue here without any state class limitations on premium increases, Continental was offering individual long-term care insurance coverage *that expressly stated premium increases would be effectuated on a state by state class basis*. For example, one policy states, "However, We may change the premium rates. Any change will apply to all policies in the same class as Yours *in the state where the policy was issued*." (Form P1-15203-A48, issued in Wisconsin with an effective date of June 3, 1994 (emphasis added)). Thus Continental knew precisely how to limit a premium increase class to a certain state, but it chose not to do that with respect to the Policy. Continental's attempt to add language into its Policy post-hoc should be rejected.

## VI.     CLASS ACTION ALLEGATIONS

45.     This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action under Federal Rule of Civil Procedure 23.

46.     Plaintiffs seek to represent the following class:

> The Nationwide Group Class: All individuals who purchased or are insured under a Continental Casualty Company group policy for long-term care coverage delivered in California, whose group policy either states or was marketed using material that states that premiums will not increase unless they also increase for all other

insureds or all other insureds in a premium class, age category, or other specified category.

47. While the exact number of members in each Class cannot be determined, each Class consists of at least thousands of persons nationwide. The members of the Class are therefore so numerous that joinder of all members is impracticable. The exact number of Class Members can readily be determined by documents produced by Continental.

48. There are questions of fact and law common to the Class, including:

    i.     Whether Continental increased long-term care premiums state by state;

    ii.    Whether Continental misrepresented the terms of its long-term care policies;

    iii.   Whether Continental misrepresented its intent to raise premiums state by state;

    iv.   Whether, through each of the foregoing practices, Continental breached its contracts with its insureds;

    v.    Whether, through each of the foregoing practices, Continental violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*);

    vi.   Whether, through each of the foregoing practices, Continental fraudulently concealed facts in the marketing and sale of long-term care coverage;

    vii.   Whether Continental's actions were unreasonable, frivolous, or unfounded;

    viii.  Whether Continentals actions were unlawful, unfair, or misleading;

    ix.   Whether Continental's actions were reckless, malicious, or willful;

    x.    Whether Plaintiffs and members of the Class are entitled to rescission;

    xi.   Whether Plaintiffs and members of the Class may have their premiums returned;

    xii.   Whether Plaintiffs and members of the Class are entitled to disgorgement of ill-gotten gains;

    xiii.  Whether Plaintiffs and members of the Class are entitled to an award of compensatory damages;

xiv.    Whether Plaintiffs and the Class are entitled to an award of statutory damages;

xv.    Whether Plaintiffs and members of the Class are entitled to an award of punitive damages;

xvi.    Whether Plaintiffs and members of the Class are entitled to an award of attorney's fees; and

xvii.    Whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

49.    Plaintiffs have the same interests in this matter as all other members of the Class, and their claims are typical of all members of the Class. Plaintiffs' claims are coincident with and not antagonistic to those of other members of the Class that Plaintiffs seek to represent. Plaintiffs and all members of the Class have sustained damages arising out of Continental's common course of conduct as outlined herein. The damages of each member of the Class were caused by Continental's wrongful conduct.

50.    Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the other members of the Class.

51.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Continental's actions generally apply to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies regarding the Class as a whole.

52.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct

such litigation. Plaintiffs' counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

53.     The substantive laws of California govern the claims of the entire Class. Continental group long-term care policies delivered in California are governed by the laws of California irrespective of the individual insured's state of residence.

## VII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT)

54.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

55.     The Policy (long-term care policy number 9725TQ) issued by Continental, and the certificates thereunder, constitute a contract between Continental and Plaintiffs.

56.     Under the express terms of the Policy, Continental agreed that it could not change the insured's premiums because of age or health.

57.     Under the express terms of the Policy, Continental agreed that while it could "change the Insured's premiums based on his or her premium class," it could do so "only if We change the premiums for all other Insureds in the same premium class."

58.     Continental's insurance policies are standardized documents, and the same terms govern Continental's long-term care policies with the Nationwide Group Class.

59.     Continental breached its contracts with Plaintiffs and the Nationwide Group Class by increasing premiums without increasing the premiums for all other Insureds in the same premium class. Continental increased the premiums under the Policy in different states at different times, and in different amounts, in violation of the policy language prohibiting increases that are not uniform across the premium class.

60. Because of Continental's breach, Plaintiffs and the Class paid increased premiums that they would not have had to pay had Continental followed the policy. Plaintiffs and the Class have been damaged and will continue to be damaged.

## SECOND CAUSE OF ACTION

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

61. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

62. As an enforceable contract, the Policy (long-term care policy number 9725TQ ) issued by Continental includes an implied covenant of good faith and fair dealing, such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

63. Under the express terms of the Policy, Continental agreed that it could not change the insured's premiums because of age or health.

64. Under the express terms of the Policy, Continental agreed that while it could "change the Insured's premiums based on his or her premium class," it could do so "only if We change the premiums for all other Insureds in the same premium class."

65. Continental's insurance policies are standardized documents, and the same terms govern Continental's long-term care policies with the Class.

66. Continental breached the implied covenant of good faith and fair dealing with Plaintiffs and the Nationwide Group Class by increasing premiums under the Policy in different states at different times, and in different amounts. By so doing, Continental increased the premiums unreasonably and with an improper motive, arbitrarily, capriciously, and in a manner

inconsistent with the reasonable expectations of the parties. These premium increases deprived Plaintiffs and members of the Class of the fruits of the contract.

67. Because of Continental's breach, Plaintiffs and members of the Class paid increased premiums that they would not have had to pay had Continental followed the policy. Plaintiffs and members of the Class have been damaged and will continue to be damaged.

## THIRD CAUSE OF ACTION

### (VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *et seq.*)

68. Plaintiffs re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

69. Continental's conduct, as alleged above, constituted and constitutes unfair, unlawful, and fraudulent business practices in violation of Section 17200 *et seq.* of the California Business & Professions Code.

70. As an established insurance company with significant experience in the industry, Continental knew at the time that it issued the Policy and distributed its marketing documents that premium increases would and could only be made state-by-state and not for the entire premium class or age group.

71. The conduct is unlawful because Continental's fraudulent concealment of its intention to raise premiums on a state-by-state basis at the time of the sale of the Policy violate California's False Advertising Law, Cal. Bus. & Prof. Code § 17500.

72. The conduct is unfair because it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to insurance consumers, which harm greatly outweighs any benefit associated with the business practice. The

conduct is additionally unfair because it constitutes a systematic breach of standard consumer contracts.

73.     Long-term care premium increases are frequently subject to oversight by state insurance commissioners, and the timing and amount of premium increases generally vary from state to state depending on the actions of a given state's insurance commissioner. Continental knew that it planned to increase premiums in amounts that varied from one state to the next, depending upon the regulatory environment in each state.

74.     The concealment of this fact was deceptive, false, and misleading because, Continental knew that it would not uniformly increase premiums for everyone in a given age group but would raise premiums at different intervals and in different amounts from one state to the next. Plaintiffs and members of the Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age group in other states, forcing them to bear a greater share of the cost of the policy than members of the same age group in other states.

75.     Plaintiffs have standing to pursue this claim because they have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

76.     Plaintiffs and the Class are entitled to relief, including full restitution of funds which may have been obtained by Defendant as a result of such business acts or practices, and an injunction against Defendant to cease and desist from engaging in the practices described herein.

77.     Defendant's conduct further caused and is causing irreparable injury to Plaintiffs and Class members. Plaintiffs and Class members are accordingly entitled to restitutionary disgorgement of Defendant's profits and injunctive relief, plus interest and attorneys' fees.

## FOURTH CAUSE OF ACTION

## (FRAUDULENT CONCEALMENT)

78.     Plaintiffs re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

79.     Continental failed to disclose that future premium increases would not be uniform across an age group but would vary from one state to the next and would vary in timing.

80.     As Continental well knew, long-term care premium increases are frequently subject to oversight by state insurance commissioners, and the timing and amount of premium increases generally varies from state to state depending on the actions of a given state's insurance commissioner. Continental knew that it planned to increase premiums in amounts that varied from one state to the next, depending upon the regulatory environment in each state.

81.     Continental's failure to disclose its intention to seek premium increases that varied in timing and amount from state to state, rather than uniform increases across the age group, constituted a fraudulent omission. As a result, Plaintiffs and the Nationwide Group Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age group in other states, forcing them to bear a greater share of the cost of the policy than members of the same age group in other states.

82.     By omitting this information, Continental intended to induce a false belief in Plaintiffs and the Nationwide Group Class that premium increases would be uniform in timing and amount across a given age group. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiffs and the Nationwide Group Class because such coverage is purchased to provide long-term financial stability.

83. Plaintiffs and the Nationwide Group Class would not have purchased Continental's long-term care coverage had they known that premium increases would vary state by state.

84. Because of Continental's fraudulent omission, Plaintiffs and the Class have suffered injury and will suffer injury in the future in the form of an insurance product that was materially different from what was promised and premium increases that should not have occurred.

## FIFTH CAUSE OF ACTION

## (DECLARATORY AND INJUNCTIVE RELIEF)

85. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

86. Plaintiffs bring this cause of action for themselves and the Class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain long-term care insurance with Continental, it is a violation of California law and the insurance contract for Continental to increase premiums in amounts that vary state-by-state rather than for the entire premium class or age group.

87. This Court has the power to declare the rights of said Continental policyholders and those who would be insured under such policies and who may suffer similar losses in the future.

88. Plaintiff, for himself and on behalf of the Class, seeks a declaration of his rights under the Continental policy, and seeks a declaration of the rights and liabilities of the parties herein.

89. Absent judicial intervention, Continental will seek to increase premiums in amounts that vary state-by-state rather than for the entire premium class or age group. In respect of

Continental's continuing unlawful practices, Plaintiffs have no plain, speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an injunction is in the public interest. Plaintiffs therefore seek an order permanently enjoining Continental from increasing long-term care insurance premiums by amounts that vary state-to-state or for any subgroup of insureds other than premium class or age group.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following judgment:

A.      An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B.      An Order appointing Plaintiffs as class representatives and appointing the undersigned counsel to represent the Class;

C.      Rescission and return of all premiums paid;

D.      Disgorgement of ill-gotten gains;

E.      Declaratory and injunctive relief, including an injunction requiring Continental to cease and desist from increasing premiums in amounts that vary state-to-state or for any subgroup of insureds other than premium class or age group;

F.      In the alternative, compensatory, statutory, and punitive damages;

G.      An award of attorney's fees and costs, as provided by law and/or as would be reasonable from any monies recovered for or benefits bestowed upon the Class; and

H.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a jury trial for all matters so triable.

DATED: April 30, 2021

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*

    Steve W. Berman (Bar #3126833)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey (*pro hac vice to be filed*)
John M. DeStefano (*pro hac vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
johnd@hbsslaw.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
jgoldenberg@gs-legal.com

Sean K. Collins (*pro hac vice to be filed*)
LAW OFFICES OF SEAN K. COLLINS
184 High Street, Suite 503
Boston, MA 02110
Telephone: (617) 320-8485
sean@neinsurancelaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's CM/ECF system, on April 30, 2021. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

DATED: April 30, 2021

_/s/ *Steve Berman*_____
Steve Berman