## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Damian B. Brown, an individual, and James Mueksch, an individual, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 21-cv-2349 |
| v. | Judge Mary M. Rowland |
| Continental Casualty Company, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

This case arises from alleged misrepresentations contained in Defendant Continental Casualty Company's long-term care insurance policy issued to Wells Fargo. Two Wells Fargo employees, Plaintiffs Damian Brown and James Mueksch, obtained coverage under the policy. They claim that the policy stated that Defendant would not raise premiums unless it could do so on a nationwide basis for insureds in a particular age group. In spite of this language, Plaintiffs claim Defendant raised premiums on a State-by-State basis, at different times, by different amounts. Plaintiffs assert that Defendant's conduct amounts to a breach of contract, fraud, and violations of the California Unfair Competition Law (UCL). Plaintiffs bring a complaint on behalf of a putative class. [1]. Defendant has moved to dismiss Plaintiffs' class action complaint. [18]. For the reasons explained below, this Court grants in part and denies in part Defendant's motion.

1

## I.    Background

This Court accepts as true the following allegations from Plaintiffs' complaint [1]. *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021).

### A.    The Policy

Plaintiffs were insured under a group long-term care policy issued and delivered to Wells Fargo & Company. [1] ¶¶ 10, 12. At the times they purchased their policies, Brown resided in California and Mueksch resided in Arizona. *Id.* Long-term care insurance pays for a variety of services like adult daycare, an assisted living facility, or skilled nursing home. *Id.* ¶ 14. According to Plaintiffs, purchasers of long-term care coverage secure a more favorable premium by obtaining coverage at an early age. *Id.*

Defendant issued and delivered group long-term care policy number 9725TQ (the Policy) to Wells Fargo in California; the Policy's effective date is January 1, 2002. *Id.* ¶ 18. As an employee of Wells Fargo, Brown purchased a certificate of coverage under the Policy with a coverage effective date of January 1, 2010. *Id.* ¶ 20. Muesksch, another Wells Fargo employee, purchased a certificate of coverage under the Policy with a coverage effective date of September 1, 2013. *Id.* ¶ 21. Defendant underwrote and established the Policy form, premium rates, and actuarial risk pool for Wells Fargo employees nationwide. *Id.* ¶ 22.

Under the heading "PREMIUM," Plaintiffs' Policy certificates state:

> We cannot change the Insured's premiums because of age or health. We can, however, change the Insured's premiums based on his or her

premium class, but only if We change the premiums for all other Insureds in the same premium class. A change may be made, as provided in the following paragraph, on any Premium Due Date after the end of the Premium Rate Guarantee Period. The Premium Rate Guarantee Period starts on the Participating Employer's Effective Date. The length of this period is stated in the Schedule of the Master Application.

*Id.* ¶ 25.

### B.    Premium Increases

Originally, Brown's certificate carried a bi-weekly premium of $3.42, or a quarterly premium of $29.29, and Mueksch's certificate carried a bi-weekly premium of $24.56, or a quarterly premium of $183.56. *Id.* ¶ 33.

In 2017, Defendant wrote each Plaintiff a letter, stating that his premium would increase by 45.475% in a phased manner, with a 15% increase occurring on May 1, 2017, a 15% increase occurring on May 1, 2018, and a 10% increase occurring on May 1, 2019. *Id.* ¶ 34. The letter then gave Plaintiff three options to respond to the anticipated premium increase: (1) continue current coverage by paying the new premium; (2) reduce coverage to help "minimize the effect" of the premium increase; or (3) execute a non-forfeiture benefit, discontinuing premium payments and accepting a reduced maximum benefit. *Id.* ¶ 35. Brown decided to pay the increased premium, keeping his current coverage in place, while Mueksch discontinued his coverage. *Id.* ¶¶ 36, 37.

Plaintiffs claim that in the 2017 letter, Defendant disclosed for the first time that the premium increase is not uniform for everyone in the same age group or premium class. *Id.* ¶ 38. Specifically, Defendant stated:

> Since Continental . . . must receive approval or authorization from certain states prior to implementing an increase, it is possible that these states will not approve or authorize the same percentage increase or authorize an increase at the same time.  It is also possible some states may deny [Continental]'s request for an increase, or require it be reduced or spread over multiple years.  In addition, impacted certificate holders have different premium due dates and have different premium billing mechanisms.  Premium increases will be staggered in accordance with the timing of regulatory approvals or authorizations and method of premium payment.

*Id.* ¶ 38.

As a result, Plaintiffs and the putative class members have been subjected to disparate increases in the cost of their premiums depending upon the State that they live in.  *Id.* ¶ 40.  Plaintiffs claim that these disparate increases violate the Policy because Defendant has not met its duties to increase premiums "based on [the insured]'s premium class" and "for all other insureds in the same premium class."  *Id.* ¶¶ 41, 42.  As a result, insureds living in different states "bear a disproportionate cost" of coverage, therein subsidizing the premiums of other insureds in contravention of the Policy. *Id.* ¶ 43. According to Plaintiffs, Defendant knew at the time it issued the Policy that premium increases would and could only be made State-by-State and not for the entire premium class or age group. *Id.* ¶ 44.

### C.    Plaintiffs' Claims and Procedural History

In their complaint, Plaintiffs bring state-law claims for: (1) breach of contract (first cause of action); (2) breach of the implied covenant of good faith and fair dealing (second cause of action); (3) violation of the California Unfair Competition Law (third cause of action); (4) fraudulent concealment (fourth cause of action); and (5) declaratory and injunctive relief (fifth cause of action). Defendant has moved to

4

dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). [18].

## II.    Legal Standard

A motion to dismiss tests the sufficiency of a claim, not the merits of the case. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the claim "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts the well-pleaded factual allegations as true and draws all permissible inferences in the pleading party's favor. *Degroot v. Client Servs., Inc.*, 977 F.3d 656, 659 (7th Cir. 2020). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## III.    Analysis

Because Defendant has moved to dismiss Plaintiffs' complaint in its entirety, this Court will address each count in order below. In addition, Defendant has raised

5

a threshold choice of law issue which this Court will address first before turning to the merits of the claims.

### A.    Choice of Law for Common Law Claims (Counts I, II, IV)

The parties dispute which State or States' law applies to the common law claims in Counts I, II, and IV. As a federal state sitting in diversity, this Court applies the same choice of law analysis that an Illinois state court would apply. *Mathis v. Metro. Life Ins. Co.*, 12 F.4th 658 (7th Cir. 2021), *reh'g denied* (Sept. 24, 2021). An Illinois court engages in a choice of law analysis only if there exists a conflict between forum law and the law of another State such that the conflict is outcome-determinative. *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017). If there is no outcome-determinative conflict, the Court applies the forum law. *Id.*; *see also Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020).

This Court begins with the contract claims in Counts I and II. Defendant argues that Minnesota law applies to the contract claims because Wells Fargo's principal place of business lies in Minnesota, and in a similar case concerning premium increases in the context of long-term care coverage, the Seventh Circuit instructed that under Illinois choice of law rules, the law of the "employer's principal place of business, where the master policy was delivered" presumptively governs contract claims. *Gunn*, 968 F.3d at 809. In support of its argument, Defendant points to the Policy itself, which lists Wells Fargo's address as located in Minneapolis, Minnesota. *See* [19-1] at 2. In response, Plaintiffs urge this Court to apply California law because they have alleged that, contrary to the address listed on the Policy,

Defendant in fact delivered the Policy to Defendant's "longstanding corporate headquarters" in San Francisco. [24] at 10; *see* [1] ¶ 5.

Neither side has, however, raised an outcome-determinative conflict among the laws of Illinois, Minnesota, and California as to Plaintiffs' breach of contract claim. That is not surprising given that the elements of a breach of contract claim are the same no matter which State's law applies. Under all three States' laws, Plaintiffs must prove that: (1) a valid contract existed; (2) they performed the conditions precedent required by the contract; (3) Defendant breached the contract; and (4) damages. *See Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020) (Illinois law); *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013) (Minnesota law); *Wills v. First Republic Bank*, No. 19-17001, 2022 WL 501126, at *1 (9th Cir. Feb. 18, 2022) (California law). Because there exists no outcome-determinative conflict, this Court applies Illinois law to the breach of contract claim.

On Plaintiffs' claim for breach of implied covenant of good faith and fair dealing, however, an outcome-determinative conflict exists because Illinois does not recognize such a cause of action while the laws of Minnesota and California do. *Compare Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 771 (N.D. Ill. 2021) (observing that "the implied covenant of good faith and fair dealing is merely a rule of construction that applies in the context of a breach-of-contract claim") *with U.S. Bank Nat'l Ass'n v. San Antonio Cash Network*, 252 F. Supp. 3d 714, 721–22 (D. Minn. 2017) (discussing it is an independent claim) *and Swearengin v. Cont'l Ins. Co.*, No.

7

CV-02-5281-EFS (SHX), 2002 WL 34439648, at *3 (C.D. Cal. Oct. 3, 2002) (noting that "breach of contract and breach of the implied covenant of good faith and fair dealing are two distinct claims" under California law). The parties agree that Illinois does not apply but disagree whether the present record counsels in favor of applying California or Minnesota law. [24] at 10; [25] at 3. This Court need not conclusively resolve whether California or Minnesota law applies to this claim, however, because as discussed below, the claim fails no matter which State's law applies.

As to Plaintiffs' claim for common law fraud in Count IV, the parties again disagree which law applies—Plaintiff says Illinois, while Defendant says California and Arizona—but neither party has identified an outcome-determinative conflict. *See* [25] at 3–4 (conceding, on behalf of the Defendant, that the Court may apply Illinois law because there is no conflict between the States' laws). This Court will therefore apply Illinois law to the fraud claim. *W. Side Salvage*, 878 F.3d at 223.

### B.     Count I: Breach of Contract

In Count I, Plaintiff claims that Defendant breached the provision of the Policy that states:

> We cannot change the Insured's premiums because of age or health. We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class. A change may be made, as provided in the following paragraph, on any Premium Due Date after the end of the Premium Rate Guarantee Period. The Premium Rate Guarantee Period starts on the Participating Employer's Effective Date. The length of this period is stated in the Schedule of the Master Application.

8

[1] ¶ 25. According to Plaintiffs, Defendant breached the Policy by increasing their premiums without also increasing the premiums for other insureds in the "same premium class" because Defendant increased premiums in different States at different times, and in different amounts. *Id.* ¶ 59. In Plaintiffs' view, the Policy entitled Defendant only to increase premiums to the extent it could do so on a nationwide basis for a particular age group. *Id.* In moving to dismiss this claim, Defendant argues that the Policy does not require *nationwide* premium increases, that Defendant possessed the right to raise premiums, and that the Policy requires merely that it not single out an insured for premium increases based upon age or health. [25] at 4. The parties' dispute thus hinges on an interpretation of the Policy language, and specifically, what the phrase "same premium class" means.

In a similar case, a sister court considered the interpretation of the same Policy language stating: "We can . . . change the Insured's premiums based on his or her premium class, *but only if We change the premiums for all other Insureds in the same premium class.*" *See Sieving v. Cont'l Cas. Co.*, 535 F. Supp. 3d 762, 769 (N.D. Ill. 2021) (emphasis added). *Sieving* observed that the Policy did not define the term "premium class," rendering it ambiguous because it was susceptible to multiple reasonable interpretations. *Id.* The court found that the plaintiff had presented one plausible interpretation: that Defendant promised to not raise premiums unless it did so for all insureds in a particular age group on a nationwide level. *Id.* Because the plaintiff had alleged that Defendant raised premiums at different times in different

States, and at different times, the court concluded that the plaintiff stated a plausible breach of contract claim. *Id.*

The *Sieving* court's reasoning persuades this Court. Nowhere does the Policy define "premium class," so this Court gives the term its average, ordinary, and normal construction. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 998 (7th Cir. 2018) (citing *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575 (Ill. 2005)). "Premium class" could mean, as Plaintiffs posit, all insureds in a given age group across the nation. It could also mean what Defendant claims: a state-specific cohort of insureds within a given age group. The term could also refer to a group of insureds that pay the same premium, whether or not they are in the same age group. In short, the term "premium class" gives rise to several reasonable interpretations, rendering it ambiguous. *See id.*

While courts applying Illinois law generally construe ambiguities in favor of the insured, an insurer can also introduce extrinsic evidence to resolve facial ambiguities before invoking that principle of *contra proferentum*. *Newman*, 885 F.3d at 999. At the motion to dismiss stage, however, this Court cannot on the current record—which is devoid of extrinsic evidence—determine the meaning of the term "premium class" due to the existence of various interpretations. As such, this Court concludes that Plaintiffs have advanced a plausible interpretation of the Policy that renders Defendant in breach based upon its actions in subjecting insureds in different States to disparate premium increases.

In moving to dismiss, Defendant argues that because a State-by-State regulatory framework applies to premium increases,[1] the Policy could not possibly be construed in the way Plaintiffs advocate—to promise nationwide premiums. [19] at 9. The *Sieving* court rejected this argument, for reasons this Court finds persuasive: Defendant was not powerless to promise consistent nationwide premiums; rather, it could have raised premiums "only to the extent allowed by the most restrictive state." 535 F. Supp. 3d at 769.[2] Thus, the fact that premiums are regulated on a State-by-State basis does not foreclose the reasonableness of Plaintiff's interpretation that the Policy guaranteed only nationwide rate increases by age group.

For these reasons, this Court denies Defendant's motion as to Count I.

## C.    Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant next moves to dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing based upon Defendant's alleged disparate premium increases. [19] at 16–17.

Under either Minnesota or California law, such a claim fails to survive a motion to dismiss if it relies upon the same alleged facts as a breach of express

---

[1] The McCarran-Ferguson Act of 1945 effectively "insulated state regulation of 'the business of insurance'" from the dormant Commerce Clause and from implied federal preemption. *Gunn*, 968 F.3d at 811 (quoting 15 U.S.C. §§ 1011–12).

[2] Defendant argues this "lowest-level" theory, as it calls it, is not legally possible because: (1) certain states have historically approved no increase thereby nullifying CNA's undisputed contractual authority to increase rates; and (2) some states require increase for adequacy purposes and require the approved rate to be charged. [19] at 15–16 & n.11. Defendant notes the *Sieving* court was not privy to this information. The Court will not take judicial notice of every state's insurance regulatory scheme. The term at issue here is ambiguous. It may be, considering appropriate extrinsic evidence, Plaintiff will be unable to establish a breach. But for now, they have plausibly asserted a claim.

contract claim. *See Google LLC v. Sonos, Inc.*, No. C 20-06754 WHA, 2022 WL 195850, at *5 (N.D. Cal. Jan. 21, 2022) (noting that "if the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seeks the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated") (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990)); *Constr. Sys., Inc. v. Gen. Cas. Co. of Wis.*, No. CIV. 09-3697 RHK/JJG, 2011 WL 3625066, at *9 (D. Minn. Aug. 17, 2011) ("While Minnesota law recognizes the implied covenant of good faith and fair dealing, it does not recognize a separate cause of action for breach of this covenant where the claimed breach arises from the same conduct as a breach-of-contract claim.").

Here, Plaintiffs' allegations concerning the alleged breach of implied covenant are no different than those accusing Defendant of breaching the Policy. In both counts, Plaintiffs assert that Defendant breached by increasing premiums under the Policy in different States at different times, and in different amounts. [1] ¶¶ 59, 66. Thus, this Court dismisses Count II as duplicative of Count I.

### D. Count IV: Fraudulent Concealment

In Count IV, Plaintiffs attempt to hold Defendant responsible for fraudulent concealment based upon Defendant's failure to disclose that future premium increases would not be uniform nationwide. [1] ¶ 79. To properly plead this claim, Plaintiffs must assert that Defendant intentionally omitted or concealed a material fact that it maintained the duty to disclose to Plaintiffs. *Wigod v. Wells Fargo Bank,*

*N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Defendant moves to dismiss Plaintiffs' fraud claim, arguing that Plaintiffs (1) fail to meet the pleading requirements under Federal Rule of Civil Procedure 9(b), (2) do not plausibly allege intentional concealment, (3) fail to identify why Defendant had a duty to relay the details of existing law to insureds, and (4) fail to allege intentionality of concealment. [19] at 17.

Taking these arguments in order, Rule 9(b) requires a plaintiff alleging fraud to allege factual particularity—that is, a plaintiff must describe the who, what, when, where, and how of the fraud. *United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021). Plaintiffs have done so here. They claim that Defendant delivered to their employer, Wells Fargo, a Policy that provided long-term care coverage to Plaintiffs during certain effective dates; the Policy was delivered in California; and Defendant engaged in fraud by concealing that the premium increases would not be uniform in timing and amount across a given age group on a nationwide basis. *See* [1] ¶¶ 5, 9–12, 82.

Defendant also argues that Plaintiffs have not plausibly alleged concealment because the fact that different States regulate premium increases is public law, and therefore, Plaintiffs should have known that Defendant would raise premiums on a State-by-State basis. [19] at 18–9. This Court disagrees. As the *Sieving* court explained, State regulations do not—in and of themselves—necessitate premium increases on a non-uniform basis. *Sieving*, 535 F. Supp. 3d at 773. Instead, Defendant could have elected to limit its premium increases to those permitted by the most

restrictive State, and thus, State regulations "do not necessarily conflict with a promise of uniformity." *Id.* Accordingly, it remains plausible that, under Plaintiffs' reading of the Policy, Defendant concealed that they intended to raise rates on a State-by-State basis while promising to do so on a nationwide basis.

This Court also rejects Defendant's argument that Plaintiffs have not alleged a viable duty to disclose. *Contra* [19] at 19. To be sure, as Defendant asserts, no duty to disclose ordinarily arises out of an insurer-insured relationship because the insurer is not an insured's fiduciary. *Ridings v. Am. Fam. Ins. Co.*, No. 20 CV 5715, 2021 WL 722856, at *6 (N.D. Ill. Feb. 24, 2021) (citing *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 737 (7th Cir. 2017)). Nevertheless, a duty to disclose might still arise when a defendant "tells a half-truth and then becomes obligated to tell the full truth." *Toulon*, 877 F.3d at 737; *see also Newman*, 885 F.3d at 1004. Plaintiffs have plausibly pled that Defendant told a half-truth—that it would only raise premiums on a nationwide basis for a particular age group—while omitting the entire truth that the premium increases would vary by an insured's State of residency. *See Sieving*, 535 F. Supp. 3d at 773–74. This suffices to allege a duty to disclose.

For similar reasons, this Court finds, contrary to Defendant's arguments, that Plaintiffs have adequately alleged that Defendant acted with the intent to induce individuals to purchase coverage. *Contra* [19] at 19–20. As explained above, under a reasonable interpretation of the Policy, Defendant promised to raise premiums only if it could do so on a nationwide basis for a particular age group. Because, under that reading of the Policy, Defendant could have raised premiums only to the extent

allowed by the most restrictive State, it remains plausible that Defendant intentionally concealed the true nature of its intentions—to disparately raise premiums on a State-by-State basis.

For these reasons, Plaintiffs' fraudulent concealment claim survives Defendant's motion to dismiss.

### E. Count III: UCL Claim

In Count III, Plaintiffs allege that Defendant's alleged concealment of State-by-State variation in premium increases violates California's UCL. [1] ¶¶ 69–70. The UCL serves the purpose of preserving "fair competition" and protects consumers from "market distortions." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 331 (2011). The UCL prohibits an individual or entity from engaging in any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Each UCL prong constitutes a separate and distinct theory of liability. *Ginsberg v. Google Inc.*, No. 21-CV-00570-BLF, 2022 WL 504166, at *6 (N.D. Cal. Feb. 18, 2022) (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009)).

Initially, Defendant moves to dismiss Meuksch's UCL claim, arguing that the UCL does not apply to injuries suffered by non-California residents from conduct occurring outside of California and by a Defendant who maintains its headquarters and principal place of business outside of California. [19] at 20. Whether a nonresident can assert a UCL claim "is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (quotation omitted).

While the "UCL may not apply to out-of-state conduct when a non-resident plaintiff brings a claim," *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *6 (N.D. Cal. Apr. 24, 2017), Mueskch here alleges that in-state conduct occurred when Defendant delivered the Policy to Wells Fargo in California, after negotiations transpired between Defendant and Wells Fargo in California. [1] ¶¶ 18, 19. That "alleged misrepresentations . . . were disseminated from California" suffices, at this stage, to demonstrate that California has sufficient contacts with Mueskch's claim.

Next, Defendant contends that Plaintiffs cannot establish that Defendant's conduct was "unlawful" because they have not also alleged a violation of California's False Advertising Law (FAL). [19] at 20. Defendant invokes the FAL because the "unlawful" prong of the UCL "borrows violations of other laws and treats [them] . . . as unlawful practices independently actionable . . . and subject to the distinct remedies thereunder." *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2022 WL 344966, at *5 (N.D. Cal. Feb. 4, 2022) (alterations in original) (quoting *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992)). Put simply, an "unlawful" business practice under the UCL is one that "violates any other law." *Schrenk v. Carvana, LLC*, No. 219CV01302TLNCKD, 2022 WL 597527, at *3 (E.D. Cal. Feb. 28, 2022).

Here, Plaintiffs allege that Defendant's fraudulent concealment of its intention to raise premiums on a State-by-State basis violates the FAL, and thus is also "unlawful" under the UCL. [1] ¶ 71. Defendant argues that Plaintiffs have failed to allege, as it must under the FAL, an omission "likely to deceive" consumers. [19] at

16

20; *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002). This Court disagrees. "Likely to deceive" in this context means the probability that a significant portion of targeted consumers could reasonably have been misled. *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1080–81 (S.D. Cal. 2019). This Court finds that Plaintiffs have plausibly raised that a significant portion of reasonable consumers could have been misled based upon Defendant's alleged promise to not raise premiums unless it could do so on a nationwide basis. And in any event, the "reasonable consumer test" usually raises questions of fact, *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015), and therefore is not an issue on which courts ordinarily grant a motion to dismiss.

Defendant also contends that Plaintiffs have not plausibly alleged a violation of the UCL based upon the "unfairness" prong. [19] at 21. While the meaning of "unfair" remains "in flux," *Day v. GEICO Cas. Co.*, No. 21-CV-02103-BLF, 2022 WL 179687, at *10 (N.D. Cal. Jan. 20, 2022), the California court of appeals has recognized that a systematic breach of certain types of contracts can constitute an unfair practice under the UCL, *Arce v. Kaiser Found. Health Plan, Inc.*, 104 Cal. Rptr. 3d 545, 562 (Cal. Ct. App. 2010). Plaintiffs have alleged precisely that—the systematic breach of insurance contracts by Defendant. They have sufficiently raised a UCL theory of "unfairness" at this stage.

### F. Count V: Requests for Declaratory and Injunctive Relief

Finally, Defendant moves to dismiss Count V *only* on the basis that declaratory and injunctive relief is unavailable if Plaintiffs have failed to state any violation of

17

their rights. [19] at 21. Because Plaintiffs have stated viable claims, this Court declines to dismiss their requests for injunctive and declaratory relief.

## IV. Conclusion

For the reasons explained above, this Court grants in part and denies in part Defendant's motion to dismiss [18]. Plaintiffs' claim in Count II for breach of the implied covenant of good faith and fair dealing is dismissed, while the other Counts remain. Defendant shall answer the complaint by April 8, 2022.

E N T E R:

Dated: March 15, 2022

_____
MARY M. ROWLAND
United States District Judge

18